**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Abraham Daghlan,<br><br>  Plaintiff,<br><br>vs.<br><br>TBI Mortgage Company, et al.,<br><br>  Defendant. | No. CV-12-01415-PHX-NVW<br><br>**ORDER** |

Before the Court is Plaintiff's Motion for Reconsideration (Doc. 12) and Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 15).

**I.  PROCEDURAL BACKGROUND**

On May 31, 2012, Plaintiff filed his Original Verified Complaint in the Maricopa County Superior Court of the State of Arizona. On June 29, 2012, Defendants Deutsche Bank National Trust Company, as Trustee for the RBSGC Mortgage Loan Trust Series 2007-B, ("Deutsche") and Mortgage Electronic Registration Systems, Inc. ("MERS") removed the case to this Court. Defendant TBI Mortgage Co. ("TBI") consented to the removal. No other Defendants were named in the Original Verified Complaint. The Original Verified Complaint alleged two counts:  (1) Quiet Title (A.R.S. § 12-1101) against all Defendants and (2) Recordings Containing False Statements in Violation of A.R.S. § 33-420 against MERS and TBI.

On July 6, 2012, Defendants Deutsche, MERS, and TBI moved to dismiss the Original Verified Complaint. On August 22, 2012, Defendants' motion was granted, and

Plaintiff was given leave to file an amended complaint. On September 7, 2012, Plaintiff moved for reconsideration of the August 22, 2012 Order.

On September 7, 2012, Plaintiff also filed his First Amended Verified Complaint, which alleges five counts. The previously pled counts are included as Counts Four and Five of the First Amended Verified Complaint. Counts One, Two, and Three of the First Amended Verified Complaint are pled against newly added Defendants Wells Fargo Home Mortgage and Wells Fargo, N.A., ("Wells Fargo")[1] for (1) Breach of Contract/Breach of the Covenant of Good Faith and Fair Dealing, (2) Negligent Performance of Undertaking (Good Samaritan Doctrine), and (3) Violation of Fair Debt Collection Practices Act.

On September 21, 2012, Deutsche, MERS, and TBI moved to dismiss the First Amended Verified Complaint against them entirely, and Wells Fargo moved to dismiss all of the First Amended Verified Complaint except the portion of Count One alleging breach of contract based on the factual allegations that Wells Fargo breached a permanent loan modification agreement with Plaintiff.

Wells Fargo also moved to dismiss the First Amended Verified Complaint because Plaintiff had not served it on Wells Fargo. In its response, Plaintiff asserted both "Wells Fargo has been summoned and served" and "Service of the Wells Fargo entities is in progress, and Proof of Service will be forthcoming." In its reply brief, Wells Fargo acknowledged that Plaintiff subsequently effected service; however, Plaintiff still has not filed proof of service as required by Fed. R. Civ. P. 4(l).

---

[1] Defendants state that Defendant Wells Fargo Bank, N.A., is improperly named as Wells Fargo Home Mortgage and Wells Fargo, N.A.

## II.     FACTS ALLEGED IN PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT

On October 17, 2006, Plaintiff purchased a home at 31904 North 19th Avenue, Phoenix, Arizona.  He executed a Deed of Trust identifying the Lender as TBI Mortgage Company, the Trustee as Westminster Title Agency, and MERS as the beneficiary.  It stated that MERS was acting as a nominee for Lender and Lender's successors and assigns.  It also stated that the Note secured by the Deed of Trust (together with the Deed of Trust) could be sold one or more times without prior notice to Plaintiff, the Borrower.

In 2008, Plaintiff contacted Wells Fargo and requested a loan modification.  Wells Fargo informed Plaintiff that he would not be considered for a loan modification unless he was at least 90 days past due in making his loan payments, and Plaintiff therefore stopped making monthly payments.  Missing these payments adversely affected Plaintiff's bond insurance for his work line of credit.  In March 2009, Plaintiff paid a law center to assist him in obtaining a loan modification.

In 2009 and 2010 Wells Fargo sent Plaintiff three forbearance agreements and entered into a loan modification agreement between the second and third forbearance agreements.  The First Forbearance Agreement dated May 7, 2009, stated that Plaintiff's loan was due for nine installments, from September 1, 2008, through May 1, 2009.  It required Plaintiff to pay $4,903.53 per month from May 25, 2009, through July 25, 2009, and $39,089.65 on August 25, 2009.  Plaintiff does not allege that he signed the First Forbearance Agreement or made any payments required thereunder.

The Second Forbearance Agreement dated November 16, 2009, stated that Plaintiff's loan was due for fifteen installments, from September 1, 2008, through November 1, 2009.  It required three payments in the amount of $3,099.71, one to be made on or before December 1, 2009, one on or before January 1, 2010, and one on or before February 1, 2010.  The Second Forbearance Agreement stated, "This is not a

waiver of the accrued or future payments that become due, but a trial period showing you can make regular monthly payments. Please note investor approval is still pending." It further stated that Plaintiff's loan would not be contractually current upon successful completion of the Agreement, any payments received would be applied to the delinquent payments, and any outstanding payments and fees would be reviewed for a loan modification upon successful completion of the Agreement. Plaintiff does not allege that he signed the Second Forbearance Agreement, but he does allege: "In compliance with the Forbearance Agreement, Plaintiff made all payments under the Agreement and continued to make such payments for a total of six (6) months." "Such payments" implies that Plaintiff made monthly payments of $3,099.71 on March 1, 2010, April 1, 2010, and May 1, 2010.

On February 19, 2010, Wells Fargo entered into a Loan Modification Agreement with Plaintiff. It stated that, as of January 21, 2010, the unpaid principal balance was $841,693.59, and interest would be charged on the unpaid principal balance at the annual rate of 5.450% from January 21, 2010. It further stated, "Borrower promises to make monthly payments of interest of U.S. $3,822.69, beginning on 03/01/2010 until 02/01/2015; at which time the interest rate will be determined in accordance with the terms of the Note." Plaintiff "scheduled and paid all monthly payments for six months when suddenly Wells canceled the Loan Modification by sending him a letter of cancellation and soon thereafter put force place insurance on his home." Plaintiff does not allege the amount of the monthly payments he made, the date that the Loan Modification was canceled, or any reasons Wells Fargo provided for the cancellation.

The Third Forbearance Agreement dated October 27, 2010, stated that Plaintiff's loan was due for the April 1, 2009 payment. It stated, "This is not a waiver of the accrued or future payments that become due, but a period for you to determine how you will be able to resolve your financial hardship." It required Plaintiff to pay $1,493.00 for

- 4 -

five months, November 10, 2010, through March 10, 2011, and then to pay $112,413.94 on April 10, 2011. Plaintiff does not allege that he made any payments required under the Third Forbearance Agreement.

During the summer of 2011, a Wells Fargo employee informed Plaintiff that his income was not enough to qualify for a modification, but if he supplemented his income by an additional $1,000 per month, he would qualify. Plaintiff's wife and daughter both obtained jobs to supplement Plaintiff's income, and Plaintiff sent proof of the new income to Wells Fargo. In December 2011, Plaintiff was informed that he did not qualify for a loan modification despite submitting evidence of supplemental income from his wife and daughter working. As of September 7, 2012, Plaintiff still sought to have his loan modified, and apparently no trustee's sale has been conducted.

In 2008 and 2011, three documents that purport to assign beneficial interest under Plaintiff's Deed of Trust were recorded:

(1) an Assignment of Deed of Trust dated December 19, 2008, transferring from MERS to Deutsche, as Trustee for the RBSGC 2007-B Trust, by its Attorney in fact Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage Inc., all beneficial interest under the Deed of Trust dated October 17, 2006, executed by Plaintiff;

(2) a Corporate Assignment of Deed of Trust dated July 7, 2011, assigning from MERS, as nominee for TBI, its successors and assigns, to Deutsche, as Trustee for the RBSGC 2007-B Trust, the MERS' beneficial interest under the Deed of Trust dated October 17, 2006; and

(3) a Corporation Assignment of Deed of Trust dated July 19, 2011, transferring from MERS to Wells Fargo all beneficial interest under the Deed of Trust dated October 17, 2006.

The recorded assignments were signed by different representatives of MERS and notarized in different states.

## III.  ANALYSIS

### A.  Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint include "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Even where a complaint has the factual elements of a cause of action present but scattered throughout the complaint and not organized into a "short and plain statement of the claim," it may be dismissed for failure to satisfy Rule 8(a). *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988).

Each claim founded on a separate transaction or occurrence must be stated in a separate count if doing so would promote clarity. Fed. R. Civ. P. 10(b). "Separate counts will be required if necessary to enable the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). To avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Id.* A plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Generally, material beyond the pleadings may not be considered in deciding a Rule 12(b)(6) motion. However, material properly submitted as part of the complaint and documents not physically attached to the complaint whose contents are alleged in a complaint and whose authenticity no party questions may be considered. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

### B. Insufficient Pleading

Plaintiff's First Amended Verified Complaint will be dismissed because it is not organized into a short and plain statement of each claim. Each claim founded on a separate transaction or occurrence is not stated in a separate count. Each claim is not supported by factual allegations identifying which Defendants took which actions that caused which harm to Plaintiff.

Further, the First Amended Verified Complaint includes factual allegations that contradict each other and the claims they are intended to support. Also, it frequently refers to "Plaintiffs" even though this action has only one plaintiff, which is especially confusing because Plaintiff alleges that he purchased his residence as a married man as his sole and separate property, yet seems to claim damages suffered by his wife and daughter as well as himself. Because Plaintiff will be granted further leave to amend his complaint one more time, additional deficiencies specific to individual counts will be discussed.

### C. Count One (Breach of Contract/Breach of the Covenant of Good Faith and Fair Dealing)

Count One against Wells Fargo combines claims for breach of contract and breach of the covenant of good faith and fair dealing, which appear to arise from three forbearance agreements and a loan modification agreement. It does not plainly allege each claim arising from each agreement and how Wells Fargo allegedly breached each agreement.

First, Plaintiff alleges "Plaintiff entered into Forbearance Plans offered by Defendants pursuant to which Plaintiffs [*sic*] made additional monthly payments, ostensibly to demonstrate Plaintiffs' [*sic*] willingness and ability to make reduced monthly payments." If the monthly payments were "reduced," they were not "additional." Plaintiff also alleges that monthly payments under the First Forbearance Agreement were $4,903.53, "roughly the same amount that Plaintiff was currently struggling to afford." Plaintiff alleges he "made the full requisite payments of $3,822.69/month on time (and sometimes early) on auto-payment and in compliance with the Loan Modification," but elsewhere the First Amended Verified Complaint alleges that during the same period he was making payments of $3,099.71 under the Second Forbearance Agreement. It is not plausible that Plaintiff was making payments of approximately $7,000 when he struggled to afford monthly payments of $4,900.

Second, Plaintiff alleges that Wells Fargo breached a contract with Plaintiff because he fully performed all obligations under the forbearance agreements, and Wells Fargo did not provide another permanent or trial loan modification, continued to declare "these loans" in default, and pursued foreclosure proceedings during the term of the Forbearance Plans. But Wells Fargo did provide a loan modification. Moreover, Plaintiff does not allege that Wells Fargo promised him a loan modification if he fully performed under the forbearance agreements. Nor does he allege that he satisfied his

obligations under the original Deed of Trust. In fact, the First Amended Verified Complaint expressly alleges that the forbearance agreements stated that upon successful completion of the payments under the forbearance agreements, "your loan will be reviewed for a Loan Modification," which "may satisfy the remaining the remaining past due amount on your loan." Plaintiff's factual allegations do not show breach of contract.

Third, the First Amended Verified Complaint alleges that Wells Fargo breached the Loan Modification by canceling it, but provides no specific allegations regarding when or why it was canceled although there is a vague allegation that "It was Defendants' practice to breach the 'Loan Modification' agreements it entered into with homeowners who sought loan modifications, because Defendants applied additional conditions and criteria for the grant of a loan modifications [*sic*] that were not set forth in the 'Loan Modification' agreement."

Fourth, Plaintiff alleges that Wells Fargo "breached the implied covenant of good faith and fair dealing implicit in the overall scheme of inducing Plaintiffs [*sic*] to make continuing payments under the Loan Modification that Defendants did not intend to honor, to make Initial Forbearance Plan payments, and, to make Second and Third Forbearance Plan payments, during which Defendants exercised in bad faith their discretion as to whether or not to offer a permanent loan modification." As alleged, Plaintiff made some reduced monthly payments instead of making $4,900 payments every month, Wells Fargo had discretion whether to offer a permanent loan modification, Wells Fargo offered a loan modification with reduced payments through February 1, 2015, and no trustee sale has been held. These alleged facts do not show Wells Fargo acted in bad faith by offering forbearance agreements or a loan modification.

Finally, Plaintiff's allegations of damages caused by his reliance on the forbearance agreements are not facially plausible, even if his reliance had been reasonable. Plaintiff alleges that he made "additional payments" under the forbearance

- 9 -

agreements "in the hopes of" obtaining a permanent loan modification. The reduced payments are not "additional" to those he was obligated to pay under the Deed of Trust; they are only "additional" when compared to Plaintiff's option of walking away from his home without making any payments. Similarly, spending money to maintain the property is an obligation of home ownership; it was caused by remaining in his home, not by relying on forbearance agreements. Plaintiff's bare reference to "lost opportunities to sell the property" not only lacks any specific alleged factual support, but also it is contradicted by Plaintiff's letter stating that "just in my area there are over 100 homes for sale for less than half the price of my mortgage." It is understandable that Plaintiff suffered anxiety as a result of his financial difficulties, but as alleged, his financial difficulties were not *caused* by Wells Fargo offering forbearance agreements.

### D. Count Two (Negligent Performance of Undertaking (Good Samaritan Doctrine))

Count Two against Wells Fargo claims negligent performance of undertaking based on the Good Samaritan Doctrine. Under Arizona law, when a person voluntarily undertakes to render services to another, even when there is no legal duty to do so, that person is liable for any lack of due care in performing it. *Lloyd v. State Farm Mut. Auto Ins. Co.*, 176 Ariz. 247, 250, 860 P.2d 1300, 1303 (Ct. App. 1992). Under Arizona law, the plaintiff's reliance upon the volunteer's undertaking is a necessary element of recovery against a volunteer. *Id.* at 251, 860 P.2d at 1304.

The First Amended Verified Complaint combines claims based on various loan modification and forbearance offers and agreements. It generally alleges that Wells Fargo voluntarily made loan modification and forbearance programs available to its borrowers and undertook to modify Plaintiff's loan. It further alleges that Wells Fargo did not have adequate staffing or resources to administer its loan modification and forbearance programs and failed to employ adequate and competent staff. It also alleges

that Wells Fargo "failed to keep accurate records concerning the temporary modification agreements and the payments made by Plaintiff in congruence with such agreements," and "Plaintiff relied on Wells and WF Home to timely process Plaintiff's payments and administer the loan modification program, in a timely manner and with due care," but it does not connect those general allegations to anything else in the First Amended Verified Complaint. It does not allege that Plaintiff made certain payments on or before they were due and Wells Fargo's records did not show that they were timely paid. It does not allege that Wells Fargo notified Plaintiff that he had failed to make payments required by any agreement even though he actually had made the required payment or that Wells Fargo canceled any offer or agreement because its records of Plaintiff's payments were incorrect. Although the First Amended Verified Complaint alleges that Wells Fargo's negligence caused Plaintiff economic harm by damaging his credit, loss of equity, overdraft fees, penalties, unwarranted tax liability, clouded title, and the potential for future damages resulting from foreclosure, those results appear to have been caused by Plaintiff's failure to make the payments required by the Deed of Trust, not by relying on Wells Fargo offering loan modification and forbearance programs.

As previously noted, Plaintiff alleges that in 2008, "[t]aking WF Home's advice, Plaintiff fell behind on his monthly payments *in the hopes* of obtaining a modification." He does not allege that Wells Fargo promised him he would obtain a loan modification by "falling behind" on his payments.

Moreover, Plaintiff alleges that Wells Fargo canceled the Loan Modification Agreement, apparently sometime between March and September 2010, and that it was difficult to get information regarding his loan modification status in January 2010 through April 2010. Any cause of action arising from these alleged events likely is barred by the two-year limitations period for tort claims, *see* A.R.S. § 12-542(1), because Plaintiff did not file the First Amended Verified Complaint against Wells Fargo until

- 11 -

September 7, 2011, and there is no basis for the First Amended Verified Complaint to relate back to the Original Verified Complaint with respect to Wells Fargo.

### E. Count Three (Violation of Fair Debt Collection Practices Act ("FDCPA"))

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Section 1692e prohibits debt collectors from making false, deceptive, or misleading representations in connection with debt collection. Section 1692f prohibits debt collectors from using unfair or unconscionable means to collect or attempt to collect any debt. Section 1692g requires debt collectors to provide consumers with certain written information in connection with debt collection.

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). It includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *Id.* However, "mortgagees and their assignees, servicing companies, and trustee fiduciaries are not included in the definition of 'debt collector.'" *Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009); *see also Bergdale*, 2012 WL 4120482 at *8. Therefore, Wells Fargo is not a "debt collector" as defined by the FDCPA.

Also, a claim under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The First Amended Verified

Complaint does not allege that Wells Fargo committed any abusive debt collection practices after the summer of 2011, and Plaintiff first pled any claims against Wells Fargo when he filed the First Amended Verified Complaint on September 7, 2011. Because there is no basis for the First Amended Verified Complaint to relate back to the Original Verified Complaint with respect to Wells Fargo, Count Three appears to be time-barred.

### F. Motion for Reconsideration and Counts Four (Quiet Title) and Five (Recordings Containing False Statements in Violation of A.R.S. § 33-420(A))

In its August 22, 2012 Order, the Court characterized Plaintiff's claims as premised on the discredited "show me the note theory" because the Original Verified Complaint focused on the securitization of the Plaintiff's Note, assignments of Plaintiff's debt, and the role of MERS. Further, the August 22, 2012 Order did not err by not accepting all of Plaintiff's allegations as true. Under Fed. R. Civ. P. 12(b)(6), the Court is not required to accept as true Plaintiff's legal conclusions, such as "Plaintiff asserts that Defendants are not the owners of the Note that was originally secured by the Deed of Trust." *See Iqbal*, 566 U.S. at 678. Nor did the Court err by concluding, "At some point, Plaintiff defaulted on the note." As plainly alleged in the First Amended Verified Complaint, in 2008 Plaintiff stopped making loan payments for at least 90 days and never brought his account current thereafter.

The Arizona Deed of Trust Act does not require a trustee or beneficiary of a trust deed to show that it has the right to enforce a deed of trust before selling the real property securing the underlying note through a non-judicial sale. *Hogan v. Washington Mut. Bank, N.A.*, __ Ariz. __, 277 P.3d 781, 783 (2012). Although Plaintiff does not demand that Defendants produce the Note, Plaintiff contends that Defendants must prove they are owners of the Note that was originally secured by the Deed of Trust, apparently as a

- 13 -

precondition to a trustee sale. Putting that burden on Defendants would conflict with the legislative purpose for non-judicial foreclosure sales:

> Non-judicial foreclosure sales are meant to operate quickly and efficiently, outside of the judicial process. The legislature balanced the concerns of trustors, trustees, and beneficiaries in arriving at the current statutory process. Requiring the beneficiary to prove ownership of a note to defaulting trustors before instituting non-judicial foreclosure proceedings might again make the mortgage foreclosure process time-consuming and expensive, and re-inject litigation, with its attendant cost and delay into the process.

*Id.* at 784 (internal quotation marks, ellipses, and citations omitted).

Plaintiff alleges that three recorded assignments contain material misstatements or false claims and requests that title be quieted against any claim by Defendants in the Deed of Trust. On the face of the documents, the recorded assignments appear to purport to transfer MERS' beneficial interest under the Deed of Trust three times, which MERS could not do unless it reacquired beneficial interest between these assignments. Plaintiff may have a claim for quiet title because of erroneous assignments, but the First Amended Verified Complaint does not plainly allege facts that support Plaintiff's claim, much less his entitlement to an order that none of the Defendants have an interest.

Further, there is no reason to assume that a person employed by a bank or a law firm cannot also be authorized to represent MERS. *Bergdale v. Countrywide Bank FSB*, No. CV12-08057-PCT-GMS, 2012 WL 4120482 at *4 (D. Ariz. Sept. 18, 2012). "MERS relies on its members to have someone on their own staff become a MERS officer with the authority to sign documents on behalf of MERS." *Id.* (quoting *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1040 (9th Cir. 2011).

Under long established Arizona law, a plaintiff cannot bring a quiet title action under A.R.S. § 12-1101 unless he has paid off his mortgage in full. *Farrell v. West*, 57 Ariz. 490, 491, 114 P.2d 910, 911 (1941); *Dufour v. Home Show Mortg. Inc.*, No. CV12-

- 14 -

01736-PHX-GMS, 2012 WL 6049683 at *5 (D. Ariz. Dec. 5, 2012); *Bergdale*, 2012 WL 4120482 at *6. "[A] suit to quiet title is of equitable cognizance and in order to invoke equity one must do equity." *Belfer v. Lewis*, 79 Ariz. 13, 17, 281 P.2d 794, 796 (1955). It is undisputed that Plaintiff did not make each loan payment on the date and in the amount he agreed to when he borrowed the money and he has not brought his account current under the terms of the Deed of Trust. Plaintiff's allegation that he "is willing and able to tender amounts due to the owner entitled to enforce his note, and the owner of the beneficial interest in his Deed of Trust" is insufficient because he has not paid in fact. It also lacks facial plausibility because he has represented that he cannot afford to make loan payments without a hardship modification and the current market value of his residential property is substantially less than the debt encumbering it. *See Twombly*, 550 U.S. at 570.

Finally, on the facts alleged, A.R.S. § 33-420(A) does not apply to the three assignments Plaintiff challenges. The statute creates liability for a person claiming an interest in real property "who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid." The phrase "document asserting such claim" in § 33-420(A) means the same sort of document described in § 33-420(C), *i.e.*, one purporting to create an interest, such as a lis pendens, mechanics lien, or a deed of trust. *Schayes v. Orion Fin. Group*, No. CV10-02658, 2011 WL 3156303 (D. Ariz. July 27, 2011); *In re MERS Litigation*, 2011 WL 4550189 at *4; *Bergdale*, 2012 WL 4120482 at *4. Plaintiff's First Amended Verified Complaint does not allege facts that show any Defendant has claimed an interest created by any of the three recorded purported assignments.

- 15 -

IT IS THEREFORE ORDERED that Plaintiff's Motion for Reconsideration (Doc. 12) is **denied** and Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 15) is **granted**.

IT IS FURTHER ORDERED that Plaintiff's First Amended Verified Complaint is dismissed under Fed. R. Civ. P. 8(a) with leave to amend by February 8, 2012.  No further leave to amend will be granted.

IT IS FURTHER ORDERED that the Clerk enter judgment dismissing this action with prejudice after February 8, 2012, if Plaintiff has not filed a further amended complaint by then.

Dated this 17th day of January, 2013.

_____
Neil V. Wake
United States District Judge