**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Abraham Daghlan,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>TBI Mortgage Company, et al.,<br><br>　　　　Defendant. | No. CV-12-01415-PHX-NVW<br><br>**ORDER** |

Before the Court is Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 33).

**I.   PROCEDURAL BACKGROUND**

This case was initially pled against Defendants Deutsche Bank National Trust Company, as Trustee for the RBSGC Mortgage Loan Trust Series 2007-B ("Deutsche"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and TBI Mortgage Co. ("TBI") in the Maricopa County Superior Court of the State of Arizona and subsequently removed to this Court. On August 22, 2012, Defendants' motion to dismiss was granted, and Plaintiff was given leave to file an amended complaint.

On September 7, 2012, Plaintiff filed his First Amended Verified Complaint, which added Defendants Wells Fargo Home Mortgage and Wells Fargo, N.A. On January 17, 2013, the Court dismissed the First Amended Verified Complaint under Fed. R. Civ. P. 8(a) with leave to amend and ordered that no further leave to amend would be granted. On February 8, 2013, Plaintiff filed a Second Amended Complaint (Doc. 32) against only Wells Fargo Bank, N.A. ("Wells Fargo").

## II. LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). To avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Id.* The principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Id.*

Certain elements of fraud claims must satisfy a higher standard of pleading under the Federal Rules of Civil Procedure. In alleging fraud or mistake, malice, intent, knowledge, and other conditions of a person's mind may be alleged generally, but the circumstances must be alleged with particularity. Fed. R. Civ. P. 9(b). Rule 9(b) requires allegations of fraud to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Plaintiffs alleging fraud "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *accord Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).

Generally, material beyond the pleadings may not be considered in deciding a Rule 12(b)(6) motion. However, material properly submitted as part of the complaint and documents not physically attached to the complaint whose contents are alleged in a complaint and whose authenticity no party questions may be considered. *Branch v.*

*Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

**III.    FACTS ALLEGED IN PLAINTIFF'S SECOND AMENDED COMPLAINT**

On October 17, 2006, Plaintiff purchased a home at 31904 North 19th Avenue, Phoenix, Arizona. To purchase the home, he borrowed $764,150.00. The loan was secured by a Deed of Trust identifying the Lender as TBI Mortgage Company, the Trustee as Westminster Title Agency, and MERS as the beneficiary.

In 2008, Plaintiff contacted Wells Fargo and requested a loan modification. Wells Fargo informed Plaintiff that he would not be considered for a loan modification unless he was at least 90 days past due in making his loan payments, and Plaintiff therefore did not make three monthly payments. Missing these payments adversely affected Plaintiff's bond insurance for his work line of credit. In March 2009, Plaintiff paid a law center to assist him in obtaining a loan modification. Plaintiff does not allege that he made any payments in 2009.

On February 19, 2010, Wells Fargo entered into a Loan Modification Agreement with Plaintiffs, which stated that it "amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated OCTOBER 17, 2006 and (2) the adjustable rate/fixed rate note (the "Note"), bearing the same date as, and secured by, the Security Instrument." The Loan Modification Agreement stated that, as of January 21, 2010, the unpaid principal balance was $841,693.59, and interest would be charged on the unpaid principal balance at the annual rate of 5.450% from January 21, 2010. It further stated, "Borrower promises to make monthly payments of interest of U.S. $3,822.69, beginning on 03/01/2010 until 02/01/2015; at which time the interest rate will be determined in accordance with the terms of the Note." And: "In addition to monthly payments, Borrower shall make monthly escrow deposits as defined in the Note. Escrow deposit payments may be subject to change in the future." The Loan Modification

Agreement also stated that all rights and conditions in the Deed of Trust relating to default in the making of payments under the Deed of Trust applied to default in the making of the modified payments.

After entering into the Loan Modification Agreement, Plaintiff made the following five payments to Wells Fargo: $4,400.00 on February 26, 2010; $4,487.06 on March 24, 2010; $3,842.69 on April 28, 2010; $3,842.69 on May 27, 2010; and $3,822.69 on June 29, 2010. Plaintiff does not allege that he made any additional escrow deposit payments. In June 2010, Plaintiff received a voice mail message from a representative of Wells Fargo, stating that the Loan Modification Agreement was being cancelled by Wells Fargo. At some point thereafter, Wells Fargo began sending Plaintiff statements that no longer reflected the modified terms.

On October 27, 2010, Plaintiff signed a Forbearance Agreement that stated his loan was due for the April 1, 2009 payment. It also stated, "This is not a waiver of the accrued or future payments that become due, but a period for you to determine how you will be able to resolve your financial hardship." It required Plaintiff to pay $1,493.00 for five months, November 10, 2010, through March 10, 2011, and then to pay $112,413.94 on April 10, 2011. Plaintiff does not allege that he made any payments required under the Forbearance Agreement.

On April 3, 2012, a notice of trustee's sale for Plaintiff's home was recorded. Plaintiff does not allege that the home has been sold.

**IV. ANALYSIS**

    **A. Count One (Breach of Contract)**

Count One alleges that Wells Fargo breached the Loan Modification Agreement by cancelling it and refusing to continue to accept modified payments. It further alleges that "Plaintiff performed under the modified terms, paying his timely full payment, and sometimes in excess of the required $3,822.69 monthly payment," but payments of

- 4 -

$3,822.69 do not include the required escrow deposits for property taxes and insurance. In fact, in a previous pleading, Plaintiff alleged that Wells Fargo "put force place insurance on his home."

Further, Plaintiff alleges he received notice of the cancellation by a voicemail message in June 2010, but does not allege receiving written notice as required by the Deed of Trust before he stopped making payments.  The Second Amended Complaint does not allege when Plaintiff began receiving statements requesting payments in the amounts required before the Loan Modification Agreement was executed, but as pled, it appears that he did not comply with the terms of the Loan Modification Agreement before June 2010 and did not make any payment after June 29, 2010.  Receiving a voicemail would not be sufficient to cancel the Loan Modification Agreement, but even if it were, Plaintiff would have been required to make payments required under the Deed of Trust.

On November 2, 2010, Plaintiff signed a Forbearance Agreement, which the Court can consider because Plaintiff referenced it in and attached it to the First Amended Complaint and its authenticity is not disputed.  The parties dispute whether the Forbearance Agreement abrogated and discharged the Loan Modification Agreement, but it makes no difference because, as alleged, Plaintiff did not make any payments from July 2010 through October 2010 and was in default.

Therefore, Count One will be dismissed because it fails to state a claim upon which relief can be granted.

**B.   Count Two (Breach of the Covenant of Good Faith and Fair Dealing)**

Count Two alleges that Wells Fargo breached the covenant of good faith and fair dealing implied in the Loan Modification Agreement by failing to tell Plaintiff it planned to breach it.  It also alleges that Wells Fargo misled Plaintiff regarding its authority to enter into the Loan Modification Agreement, but it does not allege that the

- 5 -

misrepresentation caused any injury. It does not allege that Wells Fargo's authority had any relationship to cancellation of the Loan Modification Agreement. Plaintiff's alleged facts show that his actions led to the cancellation.

Moreover, it is not plausible that Wells Fargo would enter into a Loan Modification Agreement with the intent to breach it. Plaintiff was already in default, and Wells Fargo could have noticed a trustee's sale without pretense.

Therefore, Count Two will be dismissed because it fails to state a claim upon which relief can be granted.

### C. Count Three (Fraud/False Representation)

Count Three alleges that Wells Fargo falsely represented that it "had the authority and the willingness to perform a permanent modification of Daghlan's loan." But the Loan Modification Agreement expressly does not provide a permanent modification. It provided a reduced payment schedule for March 1, 2010, through February 1, 2015, after which the interest rate and amount of monthly payments could change in accordance with the terms of the Note. Moreover, the Second Amended Complaint does not allege that the Loan Modification Agreement was cancelled because Wells Fargo lacked authority to execute it. Thus, any misrepresentations regarding Wells Fargo's authority did not cause Plaintiff's alleged damages.

Count Three also alleges that Plaintiff relied on Wells Fargo's false representations by making five monthly payments based on the Loan Modification Agreement—in amounts less than required by the Deed of Trust. He does not allege that, but for entering into the Loan Modification Agreement, he would not have made any payments. Nor does he allege that, but for entering into the Loan Modification Agreement, he could and would have paid all of the arrearages accrued before February 2010 and he could and would have made the monthly payments required by the Deed of Trust, thereby avoiding late fees, credit damage, loss of equity, overdraft fees, etc.

Rather, the Second Amended Complaint expressly alleges that Plaintiff requested a loan modification "stressing financial hardship."

Therefore, Count Three fails to state a claim upon which relief can be granted.

## V.   LEAVE TO AMEND

Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), the Court has "especially broad" discretion to deny leave to amend where the plaintiff already has had one or more opportunities to amend a complaint. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989). "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). Plaintiff has unsuccessfully amended his complaint twice and will not be granted leave for further amendment.

IT IS THEREFORE ORDERED that Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 33) is granted.

IT IS FURTHER ORDERED that Plaintiff's Second Amended Complaint (Doc. 32) is dismissed with prejudice for failure to state a claim upon which relief can be granted.

IT IS FURTHER ORDERED that the Clerk shall enter judgment dismissing this action with prejudice and shall terminate this case.

Dated this 8th day of April, 2013.

_____
Neil V. Wake
United States District Judge